The first case for argument this morning is 23-1570 Meijer Corporation v. United States. Mr. Peterson, good morning. Thank you, Your Honor. First, I'd like to thank the court for granting me an accommodation. I am working hard to get rid of this walking stick, but I'm apparently not there yet. Okay, well, hopefully we can hear each other. I've got my hearing aids in, and I'll speak loud. This customs valuation case returns to this court for the second time. In 2022, the court vacated and remanded the CIT's initial decision, which had speculated that non-market economy influences or the presence of non-market economy countries prevented the application of transaction value as a basis of appraisement and prevented the application of this court's Nisho Iwai rule of first sales in transaction value. Okay, so we are all very familiar with the background of this. What do you want here today? What are you seeking here today, and why? Your Honor, I want a couple things. The first thing I would like to see is a vacater and remand of the second decision, because the court did not follow your remand instructions. It did not consider our first sales. I would like to see this case remanded with two instructions to the trial court, because the trial record relied upon two customs regulatory tests that are given to importers to allow them to prove that the relationship of a buyer and seller does not influence the price paid or payable. The first of those is the buy and sell if not related test, which is in section 152, L1, two small i's of the customs regulations. Now, in the trial record, Meyer introduced the testimony of an expert witness who had performed a transfer pricing study. I don't know more in depth than that. Can you just lay forth the two things just so I have them both top of mind, and then you can continue on with that. Well, we think if either of the two statutory tests are satisfied, we've established the acceptability of first sale. Okay. I meant you said there were two instructions you want to be given.  If there's a vacating remand. I just want to make sure I know up front the two instructions and then I can continue on. Okay. We would like to see the case remanded to the court to consider the evidence that was given with respect to the buy and sell as if not related test. That would include the expert witness and the transfer pricing study put on the record. Is that the one that's sometimes called the normal pricing test? Yeah, the normal pricing test. The evidence is on the record and the court has never addressed it. And the second request is that we ask the court to, again, vacate and remand with directions for the court to consider the evidence that was put on the record about the all costs plus a profits test. Now that comes from section 152. So, I get that. I mean, the trial court judge did at least, I don't want to characterize what the trial court judge did, but there's at least some recognition in the record of that all costs plus profit test and he simply said you didn't meet your burden because you didn't provide the holding company's documents. So, I don't believe the testimony of your expert on this all costs plus profit. Whether that's correct or not, I think to say he didn't address it is a little bit overstating it, isn't it? He just rejected it. Now, on the normal pricing test, I get you. I didn't see where he addressed the normal pricing at all. Well, okay, but on the all costs plus a profits test, Your Honor, it requires a comparison to what they call, quote, the firm in the regulations. That term's not defined. You make a big deal out of this. I'm not sure that the air here is firm. I don't think he was requiring the holding company's documents to see their profits. I think I read his opinion as saying because I didn't get the holding company's documents, I don't believe the cost you provided for the Meijer seller entities. That's the way I read his decision. And so what you're asking us to come up with some big legal conclusion on what is a firm for purposes of these tests seems not necessary. The firm here is the seller, right? I completely agree, Your Honor. The firm is the seller. It can't be the holding company. But I think that's what he looked at, too. He looked at the firm, the seller's cost, and says, I don't believe that these are accurate because you haven't given me the holding company's documents. Well, first of all, the holding company can't be the firm because it doesn't have sales of goods of the same class. I suggest you don't waste your time arguing about what the firm is because I don't think that's what the error in his opinion is. I think what I said is that the firm is the seller, and he disbelieved the firm's reported costs because he didn't get the holding company's financials, which he thought might show that those costs attributed to the seller were somehow overstated or inaccurate. What's wrong with that statement? Well, a couple of things. He's concerned with dumping and subsidization, and we established in the first appeal. The value code is not used to combat that. He didn't do a very good job, I don't think, of addressing the last opinion that said you can't consider anti-dumping and subsidies. He did strike out all the references to non-market, so it seems like he's saying, well, even if it's not non-market economy subsidies, we still need the holding company's documents to see if somehow these prices are overstated. Now, that in itself might be an error, but I don't think it's an error attributable to considering the fact that the inputs might be dumped goods from China. Well, I think part of the problem there is that even though he didn't have access to the holding company records, which our client didn't have, he has access to the records of the manufacturing company's sellers and the trading company buyers. And those records would have shown anything flowing in from the holding company, and they do not. Your view is that the records deduced at trial the first time around include the actual cost attributable to the mire. Can I call them the mire sellers and the mire buyers, because there are so many different companies? And when I say seller, I mean the seller for what you're considering the first transaction. So your view is the record shows the mire sellers' cost, and I think there was testimony that they added a 3% profit, and that that should have been sufficient to test the all-cost-plus-profit test. Well, I think it is sufficient. What did the CIT judge say, anything about the reason for the insufficiency of that information? He did not. He was focusing solely on the holding company. And what about the Pinkerton testimony? Didn't somebody ask for underlying data that you refused to provide with respect to Mr. Pinkerton's testimony? Well, that's fine, but the record, the testimony, the Pinkerton testimony was accepted into evidence. The transfer pricing report is evidence. The court found that Pinkerton was an expert witness under Rule 702. Can I ask you about that? Because I find the record very unclear on that point. The trial court does say he's rejecting the government's motion to exclude the Pinkerton testimony. But then later in the opinion, I think I'm talking about the first opinion, not the last one. But it might be duplicated. He adopts the government's proposed findings of fact and law, which propose excluding it. So how do we know whether that testimony is in or out? Because the opinion is contradictory on that point. Well, you want to, in the first opinion, the court accepted the government's finding of facts but made no conclusions of law.  So your view that Pinkerton testimony is in? I'll ask the government about this, too. It's there for what weight the court wants to give it, but the court never considered it. Now, with regard to the all costs plus a profit test, in light of the Supreme Court's Loper-Bright decision, I think this court has the power to interpret that regulation and decide what the firm is. Now, Your Honor previously said- I think, again, don't ask for too much. I don't think the trial court interpreted firm to mean the holding company. The trial court looked at this Meyer cellar. He's just finding that the insufficiency to provide the holding company's data rendered the data provided by the Meyer cellar untrustworthy. That's not defining the holding company as the firm, and again, I think you're asking us to reach a different legal conclusion that we don't need to here. This is a factual case. Yeah. Counsel, can you turn to appendix page 8? Appendix page 8. Do you have the appendix with you? Yes, I do. Okay. And then my question for you is, do you consider the discussion on appendix page 8 relating to use of the words like presumptively to be part of the errors you're containing in the CIT's decision? Well, Your Honor, again, this is not based- the court's decision is not based on evidence. It's based on a presumption. You're saying, well, the parent company, Meyer Holding, presumptively had the ability to influence the price paid or payable. There's no facts of fact drawn from the trial record there. And, you know, again, we know that for purposes of the- for purposes of record or the regulation, the holding company can't be the firm because it has no sales. Now, to Judge Usa's point, if the lower court is saying, well, the absence of the holding company document from the record leads me to question the costs of the tested company, my answer is, number one, the records of the tested company are- the financials of the tested company are on record. And he can see that nothing's flowing from the holding company. And second, what he's concerned about is the holding company providing subsidies, you know, private subsidies instead of non-market economy subsidies. And, again, in the first opinion, this court made it clear the value code's not for fighting, dumping, and countervailing duty issues. What if there were other kinds of subsidies and not anti-dumping or countervailing duty subsidies? I don't know that private subsidies are actionable. So- and I'm going to ask the government this, too. If we're looking solely at- because we're looking to determine whether a specific transaction is at arm's length, so that means the seller has to report all the cost it incurred plus a reasonable profit. But if it buys goods below market value, that's still its cost, right? Even if it's below market value. Well, Your Honor, the cost is the cost. I think what the lower court is saying- Well, that's what I'm trying to get at. It doesn't matter, does it, if these goods are being subsidized by somebody else. To determine the arm's length transaction between the mire seller and the mire buyer, if the mire seller's costs are less than market value, as long as they're recovering those costs plus a reasonable profit, that's an arm's length transaction. I agree. And some companies, the parent companies, may be large, powerful, and well-capitalized. Other importers, the parent companies, less so. You don't make that comparison. You kind of look at the data and say, did this seller make back its cost plus a profit? That's all the regulation requires. Can I ask you just quickly, because you're getting into your rebuttal time, but I'll ask the government too, what procedure- I mean, much is made of the fact that the holding company didn't provide voluntarily its documents. Is there a procedure under the CIT rules for them to go and subpoena the holding company, even though they're not a party? Can they compel them to do this? What authority do they have over the holding company if you do not have control over that? Well, in an earlier opinion, just a summary judgment, I believe it was Judge Musgrave who said the government didn't have to file a Rule 37 letter in a motion to compel against mire, precisely because mire didn't possess the documents. Now, I agree. I'm talking about the holding company. Yeah. I mean, they could have subsidized. They could have subpoenaed it. They could have perhaps sought it through the Hague Convention. The point being the government did not. We don't have the holding company on record. The court is speculating about what might be in there, but because they have the financials of the buyer and seller, they don't need to speculate. But what if we have a circumstance where the holding company is necessary, arguably, or has necessary information? I just want to establish whether under the CIT rules they have the authority to go and demand the information from the holding company. And if they can't, what does that do to you? They would. I don't know if the British Virgin Islands is a Hague Convention country, but they could attempt. There was an August Kohler decision in the Court of International Trade about two weeks ago allowing service to be made through counsel. So are there circumstances in your view, perhaps not your case, where an adverse inference could be drawn if it's established that the holding company does have records that would be pertinent to in the analysis here? Well, in order to draw an adverse evidentiary inference, two conditions have to be met. First, it has to be established that the company you're seeking the documents from has them, which is not the case here. And second, you have to establish by evidence that there is a probability that if the documents were disclosed, they would be adverse to the disclosing party. Again, that finding wasn't made here. The CIT decides strictly on presumption. OK. All right. Let's move on to the government. Thank you, Your Honor. We'll restore some rebuttal time. Thank you. Good morning, Your Honors. May it please the Court. The trial court should be affirmed because the issue of the holding company's financials, as the Court was alluding to earlier, the trial court in an earlier decision on a partial motion for summary judgment, this is two years before trial, told Meyer, the parents' financials, the holding company parents' financials, are of interest to me. And what the Court told Meyer was that, to understand whether or not this had been an arm's length transaction, and that it hadn't been influenced by relationship. And the relationship, we are- Isn't all this stuff that occurred way before trial infected by the error that we found the last time around, which was he was digging into anti-dumping and countervailing duties, which we told him is not relevant to this test. No, Your Honor. I don't believe that that's the case because the trial court- I mean, you understand that was the main focus of his opinion last time around. Understood. Understood that that was, although alternatively, in his opinion, he mentions the failure to provide the holding company's financial documents. And so why was that important? Well, two years earlier, prior to trial, there was an opinion from the trial court where the court told, with respect to the arm's length issue, has nothing to do with this other issue of non-market economy. That's in there as well. But it says, just vis-a-vis only the information from the parent holding company. OK, but you went after not the holding company. And there was never any dispute, was there, that Myers didn't have the records in its possession? Somebody would have had to get the holding company to give up the records you're asking for, right? Yes, Your Honor. OK, did you ever try to do that? Or you absolutely have no authority to do anything in this regard? Your Honor. If you thought those records were necessary, you knew you were asking the wrong person for the records, and he couldn't produce them. You didn't do anything else to get the records, did you? The government did not. Did you? Yeah, go ahead. Yes, Your Honor is correct. The government did not move to compel. The government didn't file a Rule 37 letter, didn't set up a subpoena, and then try to figure out what type of international law we would use to obtain documents. So how do you establish an adverse inference when you never even asked the person for the documents? That seems to be the presumption. The CIT had presumptively, because they weren't forthcoming on their own with nobody even asking them for anything, they didn't come forward, end of story, case closed, you lose. Well, Your Honor, the government did ask for this information. This is information that- The government did ask Myers. The person that didn't possess the information. Did they ever ask the holding company for the information that they were seeking that the holding company had control over? The government did not ask for that information because the government did not need it. Plaintiff has the burden, and in here is appellant Myers. Isn't that the problem with this whole case is the parties put on evidence during the trial, and the district court refused to consider the evidence because he's on this wild goose chase for records of the holding company that the Meyer company at issue here doesn't have and that the government didn't try to get and put in the record. But he somehow thinks there's something nefarious going on here without any proof that there's anything nefarious. And you didn't try to show this. Your Honor, we don't have a burden with respect to providing the financial information. I know you don't. And you don't even have a burden to show that the first sale they're claiming is a legitimate arm's length transaction. That's on them. But if they put forth evidence, and they put forth a lot of evidence here, and you can tell me how you tried to rebut that evidence. It's unclear to me. But doesn't the trial court have to grapple with the evidence in the record instead of saying, well, I think that there's some influence from these Chinese companies and that I don't believe the evidence that's actually before me. I mean, this evidence was either documentary evidence or it was expert testimony under oath, right? And what he's relying on to say that that's not good enough is what seems to be a completely speculative belief that the holding company documents might show something otherwise. Well, Your Honor, that is true that the trial court is focused on the holding company documents. There was an avenue for Meyer to get those. Number one, the holding company parent, because Meyer is a consolidated financial with the holding company, would have naturally provided what you think's going to be in those holding company documents that's going to undercut the evidence that they put on the record? Well, yes, Your Honor. In fact, and as we note in our brief, there's a lot of evidence that's not on the record, OK? There aren't purchase orders and proofs of payment. So that is a problem. You have a structure that's vertically integrated. Everyone is. Can you explain to me much more clearly what difference any of that makes? Yes, Your Honor. Because if we're talking about the cost incurred by the Meyer seller, do you know what I'm talking about? Because I don't want to. There's so many different names. In this, we're just talking about the first sale transaction. In my brain, I think of it this way. You're saying seller, and there are two sellers. So I call it manufacturer. Because they are the proxy for seller on the first sale. Then I call middleman, and then I call Meyer US. Whatever it is. But I understand, Your Honor. They have costs, the manufacturer. And they've reported them, right? Maybe not sufficiently for you, but there's evidence in the record of what their costs were. Well, there's information in the record from the expert who didn't provide us with underlying documents that were reviewed as part of that. But did you ask for those documents? Yes. Did you file a motion to compel? We did not file a motion to compel. I mean, isn't that your fault? Your Honor, it's not the government's fault. His testimony. He testified at trial, right? Yes. It's sworn testimony under oath. Yes. And he acknowledged that information was missing. He acknowledged that his transfer report had an error in it. I mean, the court adopted our findings of fact. And if we go back to the earlier. Can you explain to me what would the holding company show that would make his reported costs inaccurate? From the government's perspective, one of the issues that we had was we are receiving information essentially from a black box. And so with a consolidated financial, this holding company, there are silos of people doing the exact same thing Meijer US is doing. And so if you're selling first sale, because the United States is the only country with first sale. So if your price is artificially low when it comes to the distribution chain that goes into the United States, but it's not sufficiently low when it's going to Italy, UK, Canada, Japan, because they don't have first sale. We were expecting we would find that information. Now, that's not what the court notes. The court says that it cares about the holding company. I'm a little confused as to why that matters. Because if we're talking about cost plus profit, the costs, it's the same manufacturer. So it should be the same costs. Why? Well, because. We're talking about an arm's length transaction between what you're calling the manufacturer and the middleman. Why does it matter if the manufacturer got cut or break on the materials it purchased from somebody else as long as it recovers what it paid for them? So hypothetically, let's say the manufacturer buys the good. We're talking about pots, I think. It buys the pot for $50, which is below market value. This company in China, it will sell the pot to the Canadian company for $75, but for the manufacturer that's ultimately going to ship it to the United States for $50. What difference does that make as long as the manufacturer recovers the $50 it paid plus a reasonable profit to the middleman? Well, because in the first sale context, it matters because if we have a different set of books, you're receiving your raws as the manufacturer, so the first step in the first sale. That manufacturer is receiving raws. There's a set price for that. They're running, they're manufacturing, and they're sending out to different distributors in the Meyer family. But they could sell them for different prices. They could. I guess what you're saying is you think that what this would show is that even though the Meyer manufacturer reported it paid $50 for it, on the holding company's books, it would show that they charged them $75. And so they're under-reporting the costs. Right, right, Your Honor. And it's important to under-report the costs in first sale. The district, the trial court didn't say any of that. I understand. There's no evidence on the record. It's all speculation. Well, what it is, Your Honor, is less. You're asking them to disprove something that they don't think is true. It's less than speculation, though. It is actually, the trial court told- Did you put anything on the record to suggest that the costs that the Meyer manufacturer reported for the all-cost plus profit test were incorrect? Your Honor, what we did is we noted that there were not purchase orders in the record. There should have been purchase orders between the manufacturer, first seller, and the middleman. There weren't. And there should have been proofs of purchase. If this is a paper deal, we won't know. Whoa, whoa, whoa. So you essentially relied on an absence of evidence? Is that the way to put it, as opposed to pitting forth evidence, as Judge Hughes asked? Yes, Your Honor, because an absence of evidence is also evidence. When people don't provide information, that in and of itself is evidence. Wait a minute, wait a minute. Can we just step back a minute? You mentioned a few minutes ago, he's got the burden. And there's no doubt about that. But I guess where this case kind of seems to maybe go off the rails, arguably go off the rails, is I don't see the CIT judge as having looked at their evidence and describing and discussing why it's inadequate to prove the point. I don't see any of that. In fact, you said he adopted your findings. That's true. But he also said, but the petitioner's findings are not inaccurate. So I don't know what that means or where that gets us. But he did something different here. As I read his opinion, he didn't say, this information, it is not adequate for the following reasons. I don't believe him. I don't believe him. What he said is, because I'm not getting this holding company information, I'm drawing an adverse inference that that information would hurt them. And he factored that, maybe not solely, but predominantly, is the basis for his ruling. Do you see the point that there's a difference between applying the standard burden of proof, and the regular rules, and analyzing the information the way the CIT judge did? Yes, Your Honor, I do. But I don't know that the CIT judge went that far. I think that the CIT judge said, the government asked for these documents. You should have been able to get them from your parent, because apparently you can get them from everybody else in the distribution stream. Everybody else in the Meyer family you can get documents from except your parent. So that's kind of strange. But more significantly, can people get documents from people overseas? The way the government could is a Rule 45 subpoena. The way Meyer could against his own holding company parent was a Rule 45 subpoena. The court was clear it wanted the information. Meyer chose not to provide it. We don't have to go through this again, but Meyer didn't have the information. So it's the holding company. What the CIT judge did, spent virtually all of its analysis of the record on creating an adverse inference, because it thought the holding company should come forward with this information happy and willingly. And because they didn't, he drew an adverse inference from all the information that wasn't there. Did he? Am I right? No, Your Honor. I don't believe that the court did draw an adverse inference. Formally. I think what the court formally did here was. I mean, he starts throwing around words like presumption and all that kind of stuff. It's pretty close. I mean, he didn't go through the evidence that they actually provided and the expert testimony and explain why, even though he heard the expert and had the expert report, had the documents they provided, which in your view is insufficient, but there was stuff there. He didn't explain why the expert wasn't credible, for instance, which he could have done. He didn't explain why these documents that showed some cost were insufficient. He said, presumptively, there's something in the holding companies that could be there. How is that good enough when you didn't ask for the documents, a motion to compel, you didn't ask for an adverse inference, and this is all coming from the district court, whose job is to look at the evidence put before him, not to be an investigator himself. Understood, Your Honor. And I think, though, that the record, even if one puts aside the Meyer Holding Company, the trial court adopted the government's findings of fact. And among those findings of fact were documents that are necessary for the chain of establishing a first sale. I understand you're trying to save a trial court opinion that's not done the best way. But when you're trying to say, well, even if you put aside the holding company, it still should be affirmed. He didn't make any of those findings. Maybe he could have. There's a detailed record here. But that's what he didn't do on remand. He got annoyed, complained about us for two or three pages, and then crossed out the words non-market economy and the rest of his opinion, and didn't grapple with the underlying records. Isn't that a problem? Well, Your Honor, I think it would be helpful to have things a little more effusive. But the fact that he adopted the government's findings of fact does call into question. Can I ask you one point in case this goes back? It is unclear to me whether that expert testimony was admitted or excluded. Do you have a position? Your Honor, I believe the expert. There was a flat deal. The court said, I will allow the expert in for what it's worth. And so when I read that, because that was definitely what the court said, and when I see the adoption of the government's facts, I think that the trial court found it not worth a lot. But it wasn't excluded. It was not excluded. But he didn't. This is his problem, is he didn't explain the weight he was giving. And he did rely. I mean, you can say that maybe he didn't use the words adverse inference. But as Judge Hughes pointed out, he said presumptively. Then he said their resistance and that not coming forward on their own speaks volumes. I don't know. And the foregoing leads the court to doubt the accurate ascertainment of the true value. All this stuff is his opinion. That was a large portion of his opinion. Virtually all of it, as I understand, is the basis for his ruling the way he did, was this presumption he adopted that the other side should have voluntarily come in and given the government everything they had. And the failure to do so leads me to conclude that everything they said was against what Meyer was trying to establish. Isn't that a fair reading of his opinion? I think that reading the opinion on its face without going back to the prior opinion which was adopted, which is to look through all those facts, I would agree with your honor. But when we put these two opinions together, we have to go back and look at the facts that were actually adopted by the trial court. I think it's fair for the trial court to come to that conclusion. Yes, it's focused on the holding company documents, but we don't have purchase orders. We don't have proofs of payment. How is one to verify? I mean, maybe the Meyer holding company gives us documents. We still are lacking information and we're lacking information. He didn't make any findings based upon anything you're saying. Sorry, your honor? He didn't make any of those findings explicit on the remand. Well, not on the remand, but by adopting his earlier decision which adopted the government's facts. Can I just ask you, well into your time, but I want to make sure that I have the government's position on the hypothetical, I ask the other side. If the Meyer manufacturer purchased the pot for $50, even if market value is $100, as long as it recovers that 50 plus a reasonable profit, does that meet the all cost plus profit test? Because it may be buying at a bargain, but it's recovering its bargain cost plus profit. Your honor, I think all costs plus a profit, yes. And this issue does. As long as those costs are accurate. I get what you're saying is. The costs are accurate because then, if the costs aren't accurate, then the profit's inflated. And so what profit are we comparing it to? If they're reporting a cost of $50, but they actually only pay $25, then the profit is inflated. But if they're reporting $50, even if they bought it on the open market, it was $100, if what they paid was actually $50, then it's OK. That's their cost. Right. If the cost is accurate, if it is truly their cost, then there needs to be a profit. But whose profit is it? The suggestion that you compare yourself to yourself doesn't make sense. Customs has always taken the position that they use the parent company. Why didn't the trial court look at the normal pricing test here? Wasn't there evidence on the record for that? The focus at trial really was cost plus profit. And I think that that's why. But I don't know that the normal costs actually played a role, because there's information that the expert was developing from unaudited financials. They had a financial database that was never provided to the government. This was a volume case. The expert never took into consideration that the manufacturers were subject to volume contracts to compare them apples to apples. This was apples to kumquats. It doesn't matter. They didn't do that. So when I think as to the weight of this expert, I think it was probably slim to none, because this expert didn't do the job. How do we know that? He didn't say anything. I appreciate that, Your Honor. But I think that our facts support the court not finding that expert. And what are we supposed to do with the fact that he said Meyer's proposed findings of fact are not inaccurate? Those were his findings. The findings of fact that they provided were not inaccurate, but they were not complete. And that's why he went with the government's facts. Our facts were more complete. Not that Meyer was saying anything wrong. They were citing facts that were good for them, but not the entire story. OK, thank you. Thank you, Your Honor. OK, Mr. Peterson, since we went over with the government, we'll restore three minutes of rebuttal if you need it. Thank you, Your Honor. I just want to make one point following up on what Judge Hughes was saying. The current value system is a positive system of valuation. It's not a notional system like the old one from 44 years ago, which sadly I remember. We're just looking at a particular company's costs. Now, let's say Meyer has two factories making kumquats and they've got to buy steel. Maybe they have a competitor that's got 10 factories making kumquat. I would expect that competitor is probably getting a better price for steel than Meyer. But for each of their factories, the costs are what the costs are. And so when we're looking at whether Meyer recovers its costs plus a profit, we're looking at Meyer's costs. But you do agree if Meyer, I guess we're calling it the manufacturer now, what if the costs they reported, say they reported $50 as the cost, but they were actually only charged $25 and that would appear on the holding company because we don't have purchase orders and stuff like that. That would be not representative of all costs. I don't know why anyone would over-report their costs in this situation. Well, you've done this a long time. There's lots of funny business with the reporting and the way you do transactions to try to lower duties and get out of anti-dumping duties and all that kind of stuff. So who knows? Judge Aquilino has been at this a long time too, so I think he has his suspicions. But I didn't see anything on the record and he didn't explain why his decision. But it could be relevant in certain circumstances holding companies' documents. They might show that the costs that the expert in your case came in and reported were not the actual cost charged. And if they did, they would be relevant, right? Yeah, but that's all speculation in the opinion, Your Honor. Can I just ask you a housekeeping question, which is the briefs show there were 23 pending cases on this judge's docket with you. Those all rise and fall on the term determination of the first sale? Same issue, Your Honor, covering, I guess, different periods of time. I forget if there were 21 or 23, but after a while, my eyes went fuzzy. But those all deal with the same issue and remain on the docket? They are the same issue, Your Honor. Are they the same expert and the same kinds of proof or the same kinds of black and proof? Well, we don't have a trial record in some of them. I mean, I know one of the cases was filed in 2021, so I suspect it's a different time period and we'd have to develop a different factual record. But it would be really, really helpful if this court in a remand makes very specific what the trial court needs to be looking at in cases of this type. Thank you. Thank you. Thank both sides. The case is submitted.